**UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE**

| | |
|---|---|
| JOHN THOMPSON,<br><br>        Plaintiff,<br><br>        v.<br><br>TCR$^2$ THERAPEUTICS INC., ANDREW ALLEN, ANSBERT GADICKE, AXEL HOOS, GARRY MENZEL, NEIL W. GIBSON, PRITI HEGDE, SHAWN TOMASELLO, and STEPHEN WEBSTER,<br><br>        Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff John Thompson ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against TCR$^2$ Therapeutics Inc. ("TCR2" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the proposed acquisition of the Company by Adaptimmune Therapeutics plc ("Adaptimmune").[1]

2. On March 5, 2023, the Company entered into an Agreement and Plan of Merger

---

[1] The proposed business combination described herein is referred to as the "Proposed Transaction."

(as amended on April 5, 2023, the "Merger Agreement") with Adaptimmune and CM Merger Sub, Inc. ("Merger Sub"). The Merger Agreement provides that TCR2 and Adaptimmune will combine, with TCR2 stockholders receiving 1.5117 Adaptimmune American Depositary Shares ("ADSs") per share of TCR2 common stock.[2]

3. The Company's corporate directors subsequently authorized the April 20, 2023, filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Company stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights, among other things.[3]

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

---

[2] Upon completion of the Proposed Transaction, TCR2's stockholders will own approximately 25% of the equity of the combined company, with Adaptimmune's stockholders owning approximately 75%.

[3] The Special Meeting at which stockholders are asked to approve Proposed Transaction currently is scheduled for May 30, 2023.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, the owner of TCR2 common stock.

10. Defendant TCR2 is a Delaware corporation with its principal executive offices located at 100 Binney Street, Suite 710, Cambridge, Massachusetts 02142. TCR2's shares trade on the Nasdaq Global Select Market under the ticker symbol "TCRR." TCR2 is a clinical-stage cell therapy company, focused on developing novel T cell receptor ("TCR") therapies for patients suffering from cancer. Its lead product candidate is gavo-cel, a mono TCR Fusion Construct T cells ("TRuC-T cells") targeting mesothelin-expressing solid tumors, which is in Phase 1/2 clinical trial for the treatment of non-small cell lung cancer ("NSCLC"), ovarian cancer, malignant pleural/peritoneal mesothelioma, and cholangiocarcinoma. The Company is

also developing TC-510, a mesothelin-targeted TRuC-T cell that has completed preclinical trials to treat solid tumors; and TC-520, a fratricide resistant CD70 targeting TRuC-T cells for the treatment of renal cell carcinoma and acute myeloid leukemia.

11. Defendant Andrew Allen is and has been a director of the Company at all times relevant hereto.

12. Defendant Ansbert Gadicke is and has been a director of the Company at all times relevant hereto.

13. Defendant Axel Hoos is and has been a director of the Company at all times relevant hereto.

14. Defendant Garry Menzel is and has been President, Chief Executive Officer, and a director of the Company at all times relevant hereto.

15. Defendant Neil W. Gibson is and has been a director of the Company at all times relevant hereto.

16. Defendant Priti Hegde is and has been a director of the Company at all times relevant hereto.

17. Defendant Shawn Tomasello is and has been a director of the Company at all times relevant hereto.

18. Defendant Stephen Webster has been Chairman of the Board and a director of the Company at all times relevant hereto.

19. Defendants identified in paragraphs 11-18 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

20. On March 6, 2023, Adaptimmune and the Company jointly announced in relevant part:

> PHILADELPHIA and OXFORD, U.K. and CAMBRIDGE, Mass. March 06, 2023 (GLOBE NEWSWIRE) -- Adaptimmune Therapeutics plc (Nasdaq: ADAP) and TCR² Therapeutics Inc. (Nasdaq: TCRR), today announced entry into a definitive agreement under which Adaptimmune will combine with TCR² in an all-stock transaction to create a preeminent cell therapy company focused on treating solid tumors. The combination provides extensive benefits for clinical development and product delivery supported by complementary technology platforms. As a result, and following the closing of the transaction, it is anticipated that the combined company's cash runway will extend into 2026.
>
> The lead clinical franchises for the combined company utilize engineered T-cell therapies targeting MAGE-A4 and mesothelin. These targets are expressed on a broad range of solid tumors and are supported by compelling early- and late-stage clinical data. The combined company also has a preclinical pipeline of additional target opportunities with development initially focused on PRAME and CD70.
>
> **Adrian Rawcliffe, Adaptimmune's Chief Executive Officer:** "This strategic combination takes two technologically and culturally aligned companies at the forefront of their fields and combines them to create a preeminent cell therapy company for solid tumors. The combined company will drive forward its pipeline of cell therapies aimed at treating multiple cancers with high unmet medical needs. This includes gaining approval for the first engineered TCR T-cell therapy for a solid tumor – afami-cel for the treatment of synovial sarcoma. With our cash runway anticipated to be extended into 2026 and covering multiple clinical catalysts in cancers with significant market potential, the combined company is well placed to develop cell therapies as a mainstream option for people with cancer."
>
> **Garry Menzel, Ph.D., President and Chief Executive Officer of TCR2 Therapeutics:** "The strategic rationale for this combination and the operating benefits are highly compelling for both Adaptimmune and TCR² shareholders. The combination of our two companies not only sets the stage for near-term execution but also positions the new company for the longer-term. We jointly have an array of next-generation innovations that we will integrate to address the tumor micro-environment using both autologous and allogeneic approaches. Focus and specialization are critical in the cell therapy space and we believe the

combined company has the technologies necessary to succeed. I am delighted that this combination provides a strong foundation to commercialize curative therapies for people with cancer."

**Significant Solid Tumor Opportunity**

- Solid tumors represent approximately 90% of all cancers. The combined company's clinical programs targeting MAGE-A4 or mesothelin can address multiple solid tumor indications with the potential to treat >300,000 patients per year in the EU and US.

- For patients with tumors potentially expressing MAGE-A4 and mesothelin, the combined company plans to screen for both targets to identify eligible patients.

- In addition, the preclinical pipeline, including PRAME and CD70, could expand the addressable population.

**Complementary Technology Platforms**

- The combined company will possess two clinically validated and complementary platforms in SPEAR and TRuC T-cells enabling engagement of both intracellular targets (with SPEAR) and extracellular targets (with TRuC), thus broadening the potential number of addressable cancers.

- Adaptimmune's proprietary SPEAR T-cell technology is based on the affinity enhancement and engineering of T-cell receptors (TCRs) to target solid tumor-specific peptide: HLA complexes.

- TCR$^2$'s proprietary TRuC T-cell technology uses an antibody-based binding domain fused to TCR subunits to reprogram an intact TCR complex to recognize tumor surface antigens.

- Both technologies can be further leveraged in the combined company's allogeneic platform.

**Highly Specialized Talent and Operational Benefits**

- The novelty, complexity, and rapid growth of the cell therapy field has highlighted the need for companies to develop specialized capabilities with a goal of delivering treatments that are both curative and mainstream.

- To this end, over the last decade, the teams at Adaptimmune and TCR$^2$ have been responsible for successfully advancing multiple programs from preclinical concept to late-stage products.

- The combined company, located in key innovation hubs, will have a deep bench of cell therapy professionals, infrastructure, and end-to-end capabilities.

**The Materially Incomplete and Misleading Proxy Statement**

21. The Board caused to be filed the materially incomplete and misleading Proxy Statement with the SEC on April 20, 2023  The Proxy Statement, which recommends that TCR2 stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (a) the Company's and Adaptimmune's financial projections; and (b) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Piper Sandler & Co. ("Piper Sandler").

*Material Misrepresentations and/or Omissions Concerning the Financial Projections for the Company and Adaptimmune*

22. The Proxy Statement fails to disclose material information concerning the financial forecasts for the Company, including the line items underlying TCR2's projected (a) EBT; (b) EBITDA; and (c) Risk-Adjusted Unlevered Free Cash Flow.

23. The Proxy Statement further fails to disclose TCR2 management's non-risk-adjusted projections for the Company.

24. Similarly, with respect to the "Adaptimmune Forecasts," the Proxy Statement fails to disclose the line items underlying the Adaptimmune's forecasted (a) EBIT; and (b) Unlevered Free Cash Flow.

25. The Proxy Statement further provides that "[t]he Adaptimmune Forecasts (other than "Unlevered Free Cash Flow") were provided to TCR[2] in connection with its consideration

and evaluation of the merger and to TCR²'s financial advisor, Piper Sandler[.]"[4]  Although the Proxy Statement discloses Adaptimmune's financial advisor's calculation of Unlevered Free Cash Flow, which was *not* provided to Piper Sandler, the Proxy Statement fails to disclose the Adaptimmune Unlevered Free Cash Flows that formed the basis of Piper Sandler's *Discounted Cash Flow Analysis – Adaptimmune – Standalone*.[5]

***Material Misrepresentations and/or Omissions Concerning Piper Sandler's Financial Analyses***

26. The Proxy Statement fails to disclose material information concerning Piper Sandler's financial analyses.

27. With respect to the *Discounted Cash Flow Analysis – TCR2 – Standalone - performed* by Piper Sandler, the Proxy Statement fails to disclose: (a) the Company's terminal values; (b) its net cash at March 31, 2023; and (c) the Company's fully diluted outstanding shares.

28. With respect to the *Discounted Cash Flow Analysis - Adaptimmune – Standalone* performed by Piper Sandler, the Proxy Statement fails to disclose: (a) Adaptimmune's terminal values; (b) its net cash on March 31, 2023; and (c) Adaptimmune's fully diluted outstanding shares.

29. With respect to the *Selected Public Companies Analysis – TCR² —Standalone* and *Adaptimmune — Standalone* performed by Piper Sandler, the Proxy Statement fails to

---

[4] Proxy Statement at 82.

[5] *See id.* at 94 (providing that Piper Sandler calculated an estimated range of theoretical enterprise values for Adaptimmune based on the net present value of [ ] projected unlevered after-tax free cash flows from April 1, 2023 to December 31, 2031, discounted back to April 1, 2023 . . . .").

disclose the individual multiples and financial metrics for each of the selected companies analyzed by Piper Sandler.

30. With respect to the *Implied Premia Paid Exchange Ratio Analysis* performed by Piper Sandler, the Proxy Statement fails to disclose the individual transactions analyzed, as well as the individual premiums observed for each transaction analyzed.

31. The omission of the above-referenced information renders statements in the "Certain Adaptimmune Unaudited Prospective Financial Information," "Certain TCR$^2$ Unaudited Prospective Financial Information," and "Opinion of TCR$^2$'s Financial Advisor" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

32. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of the Company will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and TCR2**

33. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

34. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially

9

misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. TCR2 is liable as the issuer of these statements.

35. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

36. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

37. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

38. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

39. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

40. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

41. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

42. The Individual Defendants acted as controlling persons of TCR2 within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of TCR2 and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

43. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

44. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

45. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

46. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of the Company, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Company stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  May 8, 2023                                                     **LONG LAW, LLC**

By:  */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@LongLawDE.com

*Attorneys for Plaintiff*

13